UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **POINT BLANK PROTECTIVE APPAREL AND UNIFORMS LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**VERTICAL SOURCE, INC.,** *et al.*,<br><br>Defendants. | Case No. 22–cv–00567–ESK–MJS<br><br>OPINION |

**KIEL, U.S.D.J.**

**THIS MATTER** comes before the Court on defendants Vertical Source, Inc. (Vertical Source), and Christopher Neary's motion to dismiss (Motion) (ECF No. 52) Counts I, II, IV, V, VI, and VII of plaintiff's amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Motion will be **GRANTED**.

### BACKGROUND

#### I. PROCEDURAL HISTORY

Plaintiff Point Blank Protective Apparel and Uniforms LLC (Point Blank) filed its initial complaint on February 4, 2022. (ECF No. 1.) The complaint asserted claims, stemming from a joint business venture gone bad, against Vertical Source and Neary for: (1) breach of contract, (2) unjust enrichment, (3) declaratory judgment, (4) veil piercing, (5) tortious interference, and (6) breach of fiduciary duty. (*Id.* ¶¶ 50–76.)

Before defendants responded to the complaint, the parties engaged in settlement negotiations that culminated in a settlement agreement in early July 2022. (*See* ECF No. 12 (letter stating that parties executed the agreement on July 2, 2022).) However, that agreement was short-lived because,

according to plaintiff, "Defendants immediately failed to comply with a material term of that agreement." (ECF No. 17.) Litigation resumed.

On August 10, 2022, defendants filed their first motion to dismiss. (ECF No. 14.) The motion was administratively terminated while the parties engaged in two rounds of Court-facilitated settlement negotiations, (minute entries after ECF Nos. 33, 43), and the motion was administratively terminated on two separate occasions. (ECF Nos. 32, 41.) When settlement negotiations proved unsuccessful, Point Blank filed a motion for leave to filed an amended complaint, (ECF Nos. 45–46), which the Court granted. (ECF No. 50.) Point Blank filed its amended complaint on November 27, 2023. (ECF No. 51, Am. Compl.) The amended complaint realleged the same six causes of action as the initial complaint and added a seventh for fraudulent inducement. (*Id*. ¶¶88–93.)

Defendants filed the present motion to dismiss on December 11, 2023. (ECF No. 52.) The Motion was accompanied by a brief (ECF No. 52-1, Defs.' Br.) and the July 2022 settlement agreement, filed separately as an exhibit. (ECF No. 53, Stlmt. Agrmt.) Point Blank opposed the Motion on January 17, 2024. (ECF No. 58, Opp'n Br.) Defendants replied on January 29, 2024. (ECF No. 60, Reply Br.) This matter was reassigned to me on March 28, 2024. (ECF No. 63.)

## II.   FACTS[1]

In September 2018, Point Blank and Vertical Source entered into a joint venture operating agreement with the goal of being awarded contracts to

---

[1] I recite only those facts necessary to decide the present Motion. The facts are taken from plaintiff's amended complaint and the July 2022 settlement agreement. Although the settlement agreement was not attached to the amended complaint, I consider it because its authenticity is not disputed and plaintiff's claim for fraudulent inducement is based on that document. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

provide protective apparel to the United States military. (Am. Compl. ¶¶ 11–13.) Within the next year, the joint venture was awarded three such contracts. (*Id.* ¶¶ 14, 15.) Over time, however, performance-related issues by Vertical Source threatened the joint venture's ability to fulfill the contracts. (*Id.* ¶ 31.) According to Point Blank, Vertical Source made no financial investment in the joint venture and relied entirely on Point Blank's manufacturing facilities and permanent workers. (*Id.*) Vertical Source also took actions that violated the operating agreement, such as making unauthorized disbursements from the joint venture's bank account and unilaterally modifying purchase orders. (*Id.* ¶¶ 32, 37.) Eventually, after Vertical Source allegedly refused to pay more than $1.7 million in invoices submitted by Point Blank to the joint venture, Point Blank notified Vertical Source of its intention to terminate the joint venture and initiated this lawsuit. (*Id.* ¶¶ 39–42, 49.)

After several months of negotiations, the parties entered into a settlement agreement in early July 2022. (*Id.* ¶¶ 50–53.) Under the terms of that agreement, Vertical Source was to place roughly $3.1 million in an escrow account within five days to help implement other parts of the settlement. (*Id.* ¶ 54; Stlmt. Agrmt. § I(C).) According to Point Blank, however, defendants did not disclose that their ability to fund the escrow account was contingent on the settlement of a then-pending False Claims Act complaint brought by the United States against defendants in 2020. (*Id.* ¶¶ 25, 55, 58.) Because that complaint was not resolved until September 2022, defendants did not meet the deadline to fund the escrow account. (*Id.* ¶¶ 56–58.) Point Blank asserts that it would not have entered into the settlement agreement had it known that defendants were unable to timely fund the escrow account. (*Id.* ¶ 59.) Defendants' alleged misrepresentations as to their ability to fund the escrow account are the basis for Point Blank's fraudulent inducement claim. (*Id.* ¶¶ 88–93.)

## **LEGAL STANDARD**

### I. MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which the court can grant relief. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### II. CONSIDERATION OF EXTRANEOUS EVIDENCE

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citations omitted). If a district court does consider extraneous evidence submitted by the defendants, the general rule is that the court must convert the motion into one for summary judgment. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The purpose of the rule is to "afford the plaintiff an opportunity to respond." *Id*.

However, an exception to the general rule exists for a "document *integral to* or *explicitly relied* upon in the complaint," which the court may consider without converting the motion to dismiss into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original). Put another way, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension*

4

*Ben. Guar. Corp.*, 998 F.2d at 1196. This exception is justified because concerns about lack of notice to the plaintiff are "dissipated where plaintiff has actual notice and has relied upon these documents in framing the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (internal quotation marks and punctuation omitted). Moreover, if not for this exception, "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Ben. Guar. Corp.*, 998 F.2d at 1196.

Accordingly, I will consider the settlement agreement in resolving the Motion.

## DISCUSSION

### I. CHOICE OF LAW

I will apply Florida law in deciding the present Motion. Both parties cite to Florida law in their respective briefs. Further, the July 2022 settlement agreement at the center of this dispute specifies that it "shall be construed and enforced in accordance with [] the laws of the State of Florida, without giving effect to otherwise applicable principles regarding conflicts of law." (Stlmt. Agrmt. §IX(A).) I will follow the parties' lead and the terms of the settlement agreement.[2]

---

[2] I note that the settlement agreement has a forum-selection clause calling for "any dispute arising from or relating to this Agreement which cannot be settled by mutual agreement shall be submitted for resolution in the state or federal court of Broward County, Florida." (*Id.*) The parties can waive the enforcement of the forum-selection clause. *Botman Int'l, B.V. v. Int'l Produce Imports, Inc.*, 205 F. App'x 937, 941 (3d Cir. 2006) ("[T]he applicability of a forum selection or choice-of-law clause is not a jurisdictional issue and a party may waive its right to enforce it."). However, with the dismissal in this Opinion and corresponding Order of all the claims except Count III, the parties may wish to dismiss that claim, as well, and proceed with a new complaint to enforce the settlement agreement "in the state or federal court of Broward County, Florida."

## II. COUNTS I, II, IV, V, AND VI

Defendants seek the dismissal of Counts I, II, IV, V, and VI of the amended complaint on the grounds that the settlement agreement released defendants from liability on those claims. (Defs.' Br. pp.27–30.) As noted, plaintiff brought those claims as part of its initial complaint, which it filed *before* the parties entered into their settlement agreement. Plaintiff then revived those claims in its amended complaint, which it filed after defendants allegedly failed to fund the escrow account as required by the settlement agreement. Under the heading "Releases," the settlement agreement contains the following language:

> A. In consideration of the covenants and agreements contained herein *Point Blank Apparel … hereby fully and forever releases*, remises, quit-claims and fully and forever discharges *Vertical Source and Neary*, and each of their partners, parents, subsidiaries, divisions, affiliates, predecessors, successors, assigns, companies, related partnerships or entities and each of its present or former officers, directors, employees, partners, shareholders, investors, accountants, owners, trustees, insurers, attorneys, agents, representatives and contractors (collectively the "Vertical Source Parties"), *from any and all claims* (including, but not limited to, claims for attorneys' or accountant's fees and costs), demands, damages, accounts, debts, liens, *suits, actions and rights or causes of action of every kind and description, in law or equity, whether known or unknown, suspected or unsuspected, which it now has or had, or hereafter can, shall or may have against the Vertical Source Parties for or by reason of any matter, event, thing, act or omission whatsoever occurring or existing at any time to and including the date hereof that relate to, arise out of, or pertain in any manner to VPA [the joint venture], the Joint Venture Agreement, the Action [the present lawsuit], or allegations contained in the Action (the "JVA Released Matters")*.
>
> B. [Reciprocal release of Point Blank by defendants.]

6

> C. The Parties agree that the releases set forth herein do not apply to any obligations created by this Agreement.
>
> D. It is the intention of the Parties executing this Agreement that the consideration provided under this Agreement serves as full and complete satisfaction of any rights whatsoever of each Party, whether monetary or non-monetary, with respect to the other Party, including, without limitation, any rights of the Parties relating to the Claims.

(Stlmt. Agrmt. §II (emphasis added).) "Accordingly," defendants argue, "based upon a plain reading of the Settlement Agreement, each of the claims that were before the Court at the time the Settlement Agreement was entered, or which could have been brought, have been fully [] and finally released" and should be dismissed. (Defs.' Br. pp. 29, 30.)

Plaintiff argues that defendant's argument is "nonsensical" because by failing to fund the escrow account, defendants "fail[ed] to satisfy a condition precedent and to provide any consideration to Point Blank Apparel in connection with the Settlement Agreement." (Opp'n Br. pp. 19, 27.) As a result, the settlement agreement is a "nullity," and "the release (and every other provision of the Settlement Agreement) is invalid and cannot be enforced against Point Blank Apparel." (*Id.* pp. 19, 27, 28.) Plaintiff adds that accepting defendants' argument "would provide them with a free pass to enforce promises made by Point Blank Apparel while shirking their own contractual duties." (*Id.* p. 28.)

For sake of completeness, the Court takes note of two other provisions in the settlement agreement that have bearing on whether to dismiss these counts. Section I(E) and I(H) of the settlement agreement provide that if certain other conditions are not met—first, plaintiff's consent to the novation of one of the government contracts; and second, the parties' agreement on the value of certain inventory—the parties "will revert to litigation." Defendants

7

argue that this language was not intended to be an exception to the general release clause quoted above. (Defs.' Br. p. 30.)[3] Plaintiff does not address this language at all.

I agree with defendants' position. Settlements are governed by the rules of contract interpretation. *Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985). In Florida, as elsewhere, "settlements are highly favored and will be enforced whenever possible." *Id.* Further, "[w]here the contractual language is clear, courts may not indulge in construction or modification and the express terms of the settlement agreement control." *Sec. Ins. Co. of Hartford v. Puig*, 728 So. 2d 292, 294 (Fla. Dist. Ct. App. 1999) (citing *Pafford v. Standard Life Ins. Co. of Ind.*, 52 So. 2d 910, 911 (Fla. 1951)). Here, the contractual language is clear. Through the release clause, plaintiff released defendants from any and all claims existing at the time of the settlement agreement related to the joint venture or "the Action," which is defined as this lawsuit. (Stlmt. Agrmt. §II, p. 3.) Because Counts I, II, IV, V, and VI were pending at the time of the settlement agreement in July 2022, they are clearly within the ambit of the release.

Plaintiff's counterarguments are unavailing. First, plaintiff's contention that defendant's obligation to fund the escrow account was a "condition precedent" to the settlement agreement is not supported by the language of the agreement itself. Plaintiff points to no language in the settlement agreement making it contingent on defendants funding the escrow account, and I could identify no such language in my own review of the settlement agreement. Second, plaintiff's assertion that defendants provided no consideration is

---

[3] Defendants argue further that "the only reasonable reading" of the "revert to litigation language" is that the parties would resume litigation on Count III of the amended complaint. (Defs.' Br. p. 30.) As Count III is not included in the present Motion, the Court takes no position on this argument.

overstated. The agreement itemizes no fewer than 11 forms of consideration exchanged between the parties, of which defendants' obligation to fund the escrow account is just one. (*Id.* §I.) As an example, defendants also agree to terms on splitting the roughly $1.6 million in the joint venture's bank account. (*Id.* §I(J).)

Finally, the settlement agreement does not give defendants "a free pass to enforce promises made by Point Blank Apparel while shirking their own contractual duties." (Opp'n Br. p.28.) Rather, the settlement agreement leaves plaintiff with its rights. If defendants failed to fund the escrow account, as alleged, plaintiff's recourse presumably would be a breach of contract claim on the settlement agreement. This conclusion is consistent with the "revert to litigation" language cited above. I agree with defendants that this language, when viewed in context, is not intended to override the capacious release clause in Section II of the settlement agreement.

The phrase "revert to litigation," for example, appears at one point in the same paragraph as "neither party shall have any obligation to proceed with this Agreement." (Stlmt. Agrmt. §I(E).) In other words, if certain conditions are not met, neither party is required to *further* perform its obligations under the settlement agreement. This does not mean, however, that the settlement agreement contemplates litigating all the claims in plaintiff's original complaint. Rather, the parties are left with their rights under the settlement agreement, including their right to sue for breach. (*See, e.g., id.* §IX(E) (shifting legal fees to non-prevailing party "[i]n the event either Party initiates litigation to enforce any rights under this Agreement or to address any breach or non-performance under this Agreement").)

Accordingly, Counts I, II, IV, V, and VI are dismissed with prejudice.[4]

---

[4] The Court need not address defendants' alternative bases for dismissal of these counts. (*See* Defs.' Br. pp.31–40.)

9

### III. COUNT VII

Defendants also seek dismissal of Count VII, which alleges that defendants fraudulently induced plaintiff to enter into the settlement agreement by falsely representing that they had the resources to timely fund the escrow account. (Am. Compl. ¶¶ 88–93.)[5] Defendants' primary argument is that Count VII fails as a matter of law due to the parol evidence rule and the settlement agreement's integration clauses. (Defs.' Br. p. 19–22.) Defendants assert that "where the document contains an integration clause, or similar statement unambiguously stating that the written contract represents the entire agreement of the parties, [that clause] supercedes [sic] all prior representations." (*Id.* p. 20 (citing cases).) The first provision cited by defendants appears in the section of the settlement agreement entitled "Reading and Understanding This Agreement":

> The respective Parties have carefully read this Agreement and have had it explained to them by their attorneys. Each Party warrants and represents that it relied on its own judgment and that of its legal counsel regarding the proper, sufficient, and agreed-upon consideration for this Agreement and that no statement or representation by any other party or their agents, employees, officers, directors, or legal representatives influenced or induced them to execute this Agreement.

(Stlmt. Agrmt. § VIII.) The second provision cited by defendants reads as follows:

---

[5] Plaintiff's fraudulent inducement claim is inconsistent with plaintiff's argument elsewhere that the settlement agreement is a "nullity." (Opp'n Br. p. 19.) "[W]here there is no contract between the parties there can be no suit for fraudulent inducement." *GlobeTec Const., LLC v. Custom Screening & Crushing, Inc.*, 77 So. 3d 802, 803 (Fla. Dist. Ct. App. 2011). Further, "[i]t is axiomatic that fraudulent inducement renders a contract voidable, not void." *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 313 (Fla. 2000). Nonetheless, having found the settlement agreement between the parties to be binding, the Court will proceed to analyze plaintiff's fraudulent inducement claim.

> This Agreement constitutes the single and entire agreement between the Parties regarding resolution of the Released Matters, including, without limitation, the Claims. This Agreement shall not be modified except by a writing signed by all Parties. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party to this Agreement except as specifically set forth herein. All prior and contemporaneous disclosures, negotiations, and agreements related to resolution of the Released Matters, including, without limitation, the Claims, have been and are merged and integrated into and are superseded by this Agreement.

(*Id.* §IX(B).) In light of these provisions, defendants assert, plaintiff's fraudulent inducement claim "is barred by the plain language of the Settlement Agreement itself." (Defs.' Br. pp. 21, 22.)

Plaintiff counters that the Court can properly consider defendants' alleged misleading statements despite the settlement agreement's integration clauses. (Opp'n Br. pp. 20, 21.) Among the cases cited by plaintiff is *Lou Bachrodt Chevrolet, Inc. v. Savage*, 570 So. 2d 306, 308 (Fla. Dist. Ct. App. 1990), which held that:

> [w]hile, under normal circumstances, a party is responsible for the terms of the contract he signed and final agreements may not be contradicted by parol or extrinsic evidence, an exception is made in an action alleging fraudulent inducement. In such a case, the parol evidence rule does not preclude admission of extrinsic evidence.

*Id.* at 308. Therefore, plaintiff argues, because defendants allegedly induced plaintiff to enter the settlement agreement by misrepresenting their ability to fund the escrow account, the Court need not adhere to the strict language of the integration clauses. (Opp'n Br. p. 21.)[6]

---

[6] Plaintiff also makes arguments premised on the notion that the settlement agreement is a "nullity" and not valid. (*See* Opp'n Br. pp. 18–21.) As I have already rejected this argument, I will not revisit it here.

11

Both parties' arguments are wide of the mark. Neither party cites a case directly on point, *Oceanic Villas, Inc. v. Godson*, 4 So. 2d 689 (Fla. 1941), which specifies the circumstances under which a contract can be contested based on fraud. *Oceanic Villas* held that:

> fraud in the procurement of a contract is ground for rescission and cancellation of any contract unless for consideration or expediency the parties agree that the contract may not be cancelled or rescinded for such cause, and that by such special provisions of a contract it may be made incontestable on account of fraud, or for any other reason.

*Id*. at 690. Put another way, "a claim for fraudulent inducement is not waived by contract terms unless the contract contains a special provision specifically making the contract incontestable because of fraud." *Onemata Corp. v. Rahman*, Civ. No. 20-62002, 2021 WL 5175544, at *4 (S.D. Fla. Oct. 12, 2021) (citing *Oceanic Villas*, 4 So. 2d at 690). The Eleventh Circuit recently clarified that *Oceanic Villas* "remains binding precedent on the law of fraudulent inducement in Florida." *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1028 (11th Cir. 2017).

The settlement agreement at issue here contains just such a "special provision" that makes the contract incontestable on account of fraud. *See Oceanic Villas*, 4 So. 2d at 690. Section III of the settlement agreement, entitled "Waiver of Rights," reads as follows:

> Each Party acknowledges and understands that it might later discover facts in addition to or different from those which it now knows or believes to be true with respect to the claims released herein but that it is each Party's intention to fully, finally, and forever settle and release all matters. known or unknown, suspected or unsuspected, which now exist or previously existed between the Parties, as set forth in Section II of this Agreement [the Release provisions]. *This Agreement is intended to be and is final and binding, regardless of any claims of misrepresentation, concealment*

12

> *of fact, or mistake of law or fact*, and shall remain in effect as a full and complete release of all such matters, notwithstanding the discovery or existence of any additional or different claims or facts relating to the Released Matters.

(Stlmt. Agrmt. §III (emphasis added).)  By agreeing that the settlement is final and binding "regardless of any claims of misrepresentations," plaintiff executed an agreement, in exchange for consideration, that makes it incontestable on account of allegations of fraud.  Here, again, where the contractual language is clear, I may not modify the settlement agreement's express terms.  *See Sec. Ins. Co. of Hartford*, 728 So. 2d at 294.

Accordingly, Count VII fails as a matter of law.  It is dismissed with prejudice.[7]

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss (ECF No. 52) is **GRANTED**.  Counts I, II, IV, V, VI, and VII of the amended complaint are **DISMISSED with prejudice**.  The only surviving claim from the amended complaint is Count III, which the Court did not consider because it was not included in defendants' Motion.

An appropriate Order accompanies this Opinion.

*/s/ Edward S. Kiel*
EDWARD S. KIEL
UNITED STATES DISTRICT JUDGE

Dated: July 23, 2024

---

[7] The Court need not address defendants' alternative bases for dismissal of Count VII.  (*See* Defs.' Br. pp. 22–27.)

13